IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| HUMBERTO SAMUEL GONZALEZ, § | |
| Petitioner, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:06-CV-0245-Y |
| § | |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Humberto Samuel Gonzalez, TDCJ-ID #1137658, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Livingston, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

In 2000 Gonzalez was charged with sexually assaulting M.A., his niece, who was twelve

years old at the time. (State Habeas R. at 164-65.) In 2002 a jury found Gonzalez guilty of three counts of aggravated sexual assault of a child under fourteen and assessed his punishment at 99 years' imprisonment on each count. (*Id.* at 167.) Gonzalez appealed his convictions, but the Second Court of Appeals affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. *Gonzalez v. Texas*, No. 2-02-470-CR, slip op. (Tex. App.–Fort Worth June 10, 2004) (not designated for publication); *Gonzalez v. Texas*, PDR No. 1001-04. Gonzalez did not seek writ of certiorari. (Petition at 3.) Gonzalez filed a state application for writ of habeas corpus, raising or more of the claims presented herein, which was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court without a hearing. *Ex parte Gonzalez*, No. WR-63,029-01-02, at cover. He filed this federal petition for writ of habeas corpus on March 31, 2006. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (holding pro se habeas petition filed when papers delivered to prison authorities for mailing).

At trial, M.A. testified that Gonzalez sexually assaulted her on more than one occasion in November 1999 during a family visit to Fort Worth for Thanksgiving. (3Reporter's R. at 31-44, 59-84; 4Reporter's R. at 16-17, 35-49, 75-77; State's Exhibit 1.) Gonzalez told her that no one would believe her if she disclosed the abuse and he threatened to kill her father. (3Reporter's R. at 34; 4Reporte's R. at 42-43.) Suspicious of the two, M.A.'s aunt, Magdalena, confronted M.A. and Gonzalez after the two returned from the mall on the Saturday following Thanksgiving, the day M.A. and her family were to return to Illinois. (4Reporter's R. at 53-62.) M.A.'s mother also confronted M.A., slapped the girl, and demanded the truth. (*Id.* at 80.) M.A. denied that anything had happened between her and Gonzalez because she was afraid, but eventually she and/or Gonzalez told Magdalena about the abuse. (*Id.* at 61-62.) Magdalena then threatened Gonzalez with a gun.

2

(3Reporter's R. at 81; 4Reporter's R. at 62.)  M.A. and her family left for the bus station shortly thereafter.  (4Reporter's R. at 6-7, 67-69.)  During the bus ride back to Illinois, M.A. confided the details of the abuse to her mother.  (*Id.* at 83-84.)  After arriving home, M.A.'s parents took her to the hospital for tests and the local authorities to give a statement.  (4Reporter's R. at 9-10; 5Reporter's R. at 114-23.)  In January 2000 a sexual assault exam was performed, which indicated that M.A. had a completely detached hymen and some scarring indicative of vaginal penetration and/or forced injury.  (5Reporter's R. at 142-59.)  According to M.A., Gonzalez had been sexually assaulting her since age five during visits to Fort Worth.  (*Id.* at 83.)

Magdalena and Gonzalez testified for the defense.  Magdalena denied being suspicious of M.A. and Gonzalez or threatening Gonzalez with a gun.  (*Id.* at 183-88.)  She stated that she was merely angry with Gonzalez on that Saturday because he had gone to the mall without telling her.  (*Id.*)  Gonzalez testified that he had never sexually abused M.A.  (*Id.* at 196, 221.)  However, he confirmed the state witnesses' testimony that after he and M.A. returned from the mall on Saturday, Magdalena was angry with him, accused him of having sex with M.A., and pointed a gun at him.  (*Id.* at 242-45.)  He also admitted that he offered M.A.'s mother $10,000 to drop the charges and that he fled to Chile for eight months after criminal charges were brought.  (*Id.* at 248-49.)

### D.  ISSUES

Although Gonzalez's claims are multifarious, his primary claims are construed as follows:

(1) His conviction was obtained by false testimony (ground one);

(2) His conviction was obtained by a coerced outcry (ground two);

(3) His conviction was obtained by the prosecution's failure to inform the defense about favorable evidence (ground three);

(4) M.A. recanted her allegations before trial (ground four);

  (5) Trial counsel rendered ineffective assistance of counsel (grounds five, six, seven, and ten);

  (6) The state was not ready for trial within 180 days of commencement of the criminal action against him; and

  (7) The trial court abused its power in several respects (ground nine). (Pet. at 7-8 & Attachment.)

### E. RULE 5 STATEMENT

Quarterman believes that Gonzalez has failed to exhaust available state remedies as to his speedy trial claim (claim six, as enumerated above), one or more of his ineffective-assistance claims, and one or more of his abuse-of-discretion claims by failing to raise the claims in his petition for discretionary review or in his state habeas application. (Resp't Answer at 5-11.) Under the federal exhaustion requirement, a habeas petitioner must have fairly presented the substance of his federal claim to the highest court of the state. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In order for a claim to be exhausted, the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions. *See Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006). It is not enough that a somewhat similar state-law claim was made. *Id.* An argument based on a legal theory distinct from that relied upon in the state court does not meet the exhaustion requirement. *Id.* Exhaustion requires a state prisoner to present the state courts with the same claim he urges upon the federal courts. *Id.*

To the extent Gonzalez did not raise his sixth claim, one or more of his ineffective-assistance claims, or one or more of his abuse-of-discretion claims in his petition for discretionary review or

4

his state habeas application, the claims are unexhausted.[12] (Resp't Answer at 5-11.) Under the Texas abuse-of-the-writ doctrine, however, Gonzalez cannot now return to state court for purposes of exhausting the claim. *See id.* art. 11.07, § 4. The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, Gonzalez's sixth claim and those claims not previously raised in state court under claims five and seven are procedurally barred from this court's review. *See Smith v. Johnson*, 216 F.3d 521, 523- 24 (5th Cir. 2000). Gonzalez's ignorance of the law or the legal significance of certain facts does not constitute cause for excusing the procedural default. *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). Thus, the following discussion addresses only Gonzalez's claims sufficiently exhausted in the state courts.

F.  DISCUSSION

1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[1]Gonzalez raised a general speedy-trial claim in his original state habeas application, but he did not adequately develop the claim or raise the claim in his amended state habeas application, and the state habeas court did not address any such claim in its findings.

[2]Gonzalez contends he raised one or more of the unexhausted claims in his motion for rehearing, however, his motion for rehearing was filed in the intermediate appellate court, not in the Texas Court of Criminal Appeals, the state's highest court. (Pet'r "Object to Quarterman's Answer" at 2.)

federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as here, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. False/Coerced Testimony and Recantation

Gonzalez claims that his conviction was obtained by the prosecution's use of false testimony and a coerced outcry from M.A. and that M.A. recanted her allegations against him before trial (claims one, two, and four, as enumerated above). (Petition at 7-8.) In support of his claims in the state habeas court, Gonzalez provided the affidavits of various family members averring that on

Saturday, November 27, 1999, they heard M.A. tell her Aunt Magdalena nothing happened between her and Gonzalez. (State Habeas R. at 117-20.) Gonzalez further directs the court to various record references in support of his allegations. Specifically, he cites to volume 3, pages 2 and 3 in the reporter's record in support of his first and third allegations, in which the prosecutor informed the court that he met with M.A. and that she stated nothing happened on November 27, 1999, the date alleged in count three of the indictment. (3Reporter's R. at 2-3.) He cites to volume four, page 80, in support of his second claim. He urges that M.A.'s outcry was coerced by her mother's reaction to the accusations–i.e., accusing and slapping the child. In addition, Gonzalez has presented for the first jtime an affidavit executed by M.A., who is now nineteen years old, recanting her testimony at Gonzalez's trial.

The state habeas judge, who also presided over Gonzalez's trial, entered findings refuting Gonzalez's claims. (State Habeas R. at 147-58, 163.) The state court found that Gonzalez failed to present reliable evidence that the state presented false or perjured testimony or that M.A.'s testimony was false or perjured, and the record does not support his allegation that M.A.'s outcry was coerced by her mother's actions. (*Id.* at 148.) Gonzalez asserts that the state presented false and perjured testimony because it was aware that M.A. had recanted her allegations. However, the record reflects that M.A. recanted only her allegations relevant to count three of the indictment at the time of trial kand maintained that two other instances, alleged in counts one and two, did occur during the visit. Moreover, the prosecution believed that the mother's outcry testimony would serve as a legitimate factual basis to proceed against Gonzalez on count three. (3Reporter's R. at 2-3.) Finally, these claims essentially raise the issue of witness credibility. Any inconsistencies or contradictions in the witnesses' testimony, however, was a matter for the jury to resolve. *See Little*

7

*v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988). M.A.'s 2006 recanting affidavit, uncorroborated or unsupported by any other evidence, does not preclude the factual findings of the state habeas court. *See Summers v. Dretke*, 431 F.3d 861, 878 (5th Cir. 2005).

### 3. Prosecutorial Misconduct

Gonzalez claims the prosecution intentionally withheld, until four days before trial, information regarding the whereabouts of Bruce Sands, the emergency room doctor who first interviewed M.A. at the Illinois hospital in November 1999 (claim three, as enumerated above). (Petition at 7.) The state habeas court found that Gonzalez had presented no evidence that the state had deliberately withheld information and/or records from Illinois and that the prosecution had attempted to get relevant information from Illinois but had difficulty doing so. (State Habeas R. at 152.) Furthermore, the record reflects that the prosecution otherwise provided an open file policy and made it possible for Gonzalez's counsel to speak to Sands before the state's expert witness testified. (*Id.* at 65-67.) Allowing the appropriate deference to the state court's findings, which are supported by counsel's affidavit, the state courts' adjudication of this claim was not unreasonable. (*Id.* at 65-67.)

### 4. Ineffective Assistance of Counsel

Gonzalez claims he received ineffective assistance of trial counsel because counsel failed to (1) present witnesses on his behalf, (2) disclose conflicts of financial interest, (3) challenge the indictment, (4) impeach the state's expert witness, (5) make objections at trial, (6) conduct a proper and adequate independent investigation before trial, and (7) present an expert witness for the defense. (claim five, as enumerated above). (Attachment to Petition.)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial.

8

U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense. *Id.* at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a petitioner's ineffective assistance claims have been reviewed on the merits under the *Strickland* standard and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the court. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002); *Santellan v. Cockrell*, 271 F.3d 190, 198 (5th Cir. 2001).

After conducting a hearing by affidavit, the state habeas judge made specific findings on Gonzalez's ineffective-assistance claims, based largely on counsel's detailed affidavit, and concluded that Gonzalez had failed to prove ineffective assistance under the requirements of *Strickland*. (State Habeas R. at 57, 148-52, 154-56.) Weighing the credibility of the affiants was the role of the state court, and, clearly, the state court found the affidavit of counsel to be credible. *See Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (providing that a trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of

correctness and are "virtually unreviewable" by the federal courts). In turn, the Texas Court of Criminal Appeals denied habeas relief on the basis of the habeas court's findings.

Gonzalez presents no compelling argument or evidence to rebut the state courts' adjudication of his claims, and there is nothing in the record to suggest that, but for trial counsel's alleged acts and omissions, the jury would have acquitted Gonzalez or imposed a lower sentence. Thus, having independently reviewed Gonzalez' ineffective-assistance claims in conjunction with the state court records, this court cannot say that the state courts' determination was contrary to or involved an unreasonable application of the *Strickland* standard or that it was based on an unreasonable determination of the facts as presented in the state court proceedings. 28 U.S.C. § 2254(d)(2), (e)(1).

### 5.  Trial Court Error

Gonzalez claims the trial court abused its discretion by denying his motion for continuance and motion for new trial, denying him access to medical records and CPS records, and denying his sons' sworn affidavits and testimony (claim seven, as enumerated above). (Attachment to Petition.)

According to Gonzalez, the trial court abused its discretion by denying his motion for continuance so that he could secure the presence of Sands at trial and by denying his motion for new trial, without a hearing, based on the court's denial of his motion for continuance. (2Reporter's R. at 6; Clerk's R. at 223.) Sands initially examined M.A. on November 28, 1999, at the Victory Memorial Hospital in Illinois. During the exam, M.A. apparently told the doctor that there had not been complete penetration by Gonzalez. (8Reporter's R., Defendant's Exhibit 10.) The medical records were not made available to the defense until eight days before trial.

The Second Court of Appeals considered these claims and determined that the trial court did not abuse its discretion by denying Gonzalez's motion for continuance because Gonzalez made no

10

attempt to present his *Brady* and discovery motions to the court prior to the day before trial. *Gonzalez*, No. 2-02-470-CR, slip op. at 5. The appellate court also found no abuse of discretion on the part of the trial court in denying Gonzalez's motion for new trial because Gonzalez failed to show that the presence of Sands or his live testimony would have altered the verdict. *Id.* Additionally, the state court reasoned that the medical records regarding Sand's examination were already before the jury and the motion did not suggest the doctor would have provided any additional significant evidence. *Id.* These claims essentially involve evidentiary rulings by the trial court and are thus not cognizable on federal habeas review where, as here, the rulings did not render Gonzalez's trial fundamentally unfair. *See Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).

The record does not support Gonzalez's claims that the trial court erroneously denied him access to medical records or his sons' sworn affidavits or testimony. The court ordered the release of medical records and the state maintained an open file policy in the case. (2Reporter's R. at 11.) *Gonzalez*, No. 2-02-470-CR, slip op. at 2. Further, as the state habeas court found, nothing in the record suggests Gonzalez was denied the right to present his sons as witnesses. (State Habeas R. at 153.) Nor does the record indicate that the court erroneously denied Gonzalez access to CPS records. (2Reporter's R. at 13-14.) The court conducted an *in camera* inspection of the records and informed Gonzalez and his counsel that the records did not, as the defense alleged, contain evidence that M.A. had recanted her allegations or any other potentially exculpatory evidence. (*Id.*) Thus, the state courts' adjudication of these claims are entitled to the appropriate deference.

## II.  RECOMMENDATION

Gonzalez has not demonstrated that he is entitled to federal habeas relief; thus, his petition for writ of habeas corpus should be denied.

### III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until May 9, 2007.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

### IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until May 9, 2007, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to

the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 18, 2007.

      /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE